UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JERRY JAMES** | * | **CIVIL ACTION NO. 09-0297** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Jerry James, born December 8, 1962, filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 12, 2003, alleging disability as of February 15, 2001,[1] due to borderline intellectual functioning ("BIF") and low back pain. A hearing held on January 18, 2005, did not result in a decision. (Tr. 320). A second hearing resulted in an unfavorable decision, which was reversed by the Appeals Council on June 13, 2007.[2] (Tr. 282-317). On remand, a third hearing, held on August 12, 2008, resulted in an

---

[1] The prior denial at the hearing level was issued on September 27, 2002. (Tr. 15). Thus, the earliest possible onset date is September 28, 2002, which is the day after that decision.

[2] The case was remanded to the Administrative Law Judge ("ALJ") to obtain additional evidence regarding claimant's BIF, further evaluate claimant's mental impairment, give further consideration to claimant's maximum residual functional capacity ("RFC"), and, if warranted, obtain supplemental evidence from a vocational expert. (Tr. 15, 72-74).

unfavorable decision. Claimant appealed that decision to this Court.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Teche Action Clinic dated March 7, 2001 to July 23, 2003**. On March 7, 2001, claimant was seen for low back and hand pain after falling off of the roof while working. (Tr. 132). He was prescribed Vioxx and Flexeril. He was seen several times for continued complaints of back pain. (Tr. 125-31).

**(2) Consultative Examination by Naomi L. Friedberg, Ph.D., dated September 29, 2003**. Administration of the WAIS-III revealed a verbal IQ score of 65, performance score of 57, and full scale score of 58. (Tr. 138). Dr. Friedberg observed that the results of the evaluation "may be somewhat lowered

2

due to concentration impairment." (Tr. 137). She stated that considering claimant's test performance, he would have great difficulty understanding, remembering, and carrying out detailed instruction. (Tr. 138). He had some difficulty in remembering and carrying out simple instructions, which appeared to be due to concentration impairment, perhaps by affectual interference and/or medication side effects. She opined that claimant likely functioned somewhere at the upper end of the mild mentally disabled to borderline range, as he appeared to be capable of holding down semi-skilled jobs in carpentry and welding. She found, however, that claimant would likely have great difficulty completing simple repetitive tasks for blocks of time, and difficulty persisting at a normal pace over a routine 40-hour workweek. She noted that he had difficulties staying focused and would, at times, stare off and forget the questions she had asked him. The assessment was mild mentally disabled.

**(3) Consultative Examination by Dr. Steven Davidoff dated October 4, 2003**. Claimant complained of leg and lower back pain since 2001. (Tr. 139). He also complained of left shoulder pain, stating that he had been unable to lift anything since that time and continued to have intermittent swelling of his hand.

His pain was 8 out of 10 and was improved with Bextra and Neurontin. Additionally, he had a history of dizziness and daily headaches.

Claimant was able to dress himself occasionally, feed himself, stand 15 minutes at a time for a total of 30 minutes in eight hours. He could walk on level ground one-half block. He could sit for 40 minutes, lift eight pounds, and drive up to 20 minutes. He could not perform household chores, could occasionally shop, and could not go upstairs or mow. His medications included Cyclobenzaprine, Bextra, Neurontin, and Tramadol.

On examination, claimant was 68 inches tall and weighed 192 pounds. (Tr. 140). His blood pressure was 119/79. He could ambulate well, and get on and off the exam table and up and out of the chair with no problems. He could dress and undress himself normally.

Reflexes of the feet were 2+. Claimant had no atrophy, swelling, or redness. He was able to ambulate with mild difficulty, and was able to toe walk and heel walk across the room 10 to 15 feet. His grip strength was 5/5.

Range of motion was markedly decreased on backward extension. Abduction was decreased. Straight leg raising was markedly decreased on the left. (Tr. 141). Motor strength was 4/5 in the left extremities and 5/5 on the right. Sensory exam was normal.

Claimant was able to do finger to nose and heel to shin without difficulty. Cranial nerves were intact.  Deep tendon reflexes were 2+.

X-rays showed mild lordosis, no fractures, and no disk space narrowing.

Dr. Davidoff's assessment was low back pain for two years with an assistive device required for gait, likely with no decreased ability to sit, stand, and lift.  He also opined that claimant likely had mild difficulty walking greater than an eight-hour period.  He had no evidence of dizziness on examination.

**(4) Mental RFC Assessment dated October 24, 2003**.  Lawrence Klusman, Ph.D., determined that claimant was moderately limited as to his ability to understand, remember, and carry out detailed instructions, and maintain attention and concentrate for extended periods.  (Tr. 142).  He was not significantly limited in any other area.

**(5) Psychiatric Review Technique ("PRT") dated October 24, 2003**. Claimant was assessed for borderline intellectual functioning.  (Tr. 146-47).  Dr. Klusman determined that claimant had mild difficulties in maintaining concentration, persistence, or pace, but no other limitations.  (Tr. 156).  This assessment was affirmed on November 12, 2003.  (Tr. 160-61).

**(6) Records from Teche Action Clinic dated September 24, 2003 to May 10, 2004**.  Claimant continued to complain of chronic low back pain.  (Tr. 163-

76).

### (7) Consultative Orthopedic Examination by Dr. Jonathan M. Shults dated December 29, 2005.

Claimant complained of constant pain in the midline of his lumbar spine to the sacrum since 2001. (Tr. 190). He stated that his pain was worse with activity, and better with rest and medications.

On examination, claimant did not walk with any device, and had a normal gait without any antalgic or shuffle componenet. (Tr. 191). He was able to toe walk, but had difficulty walking on his heels due to pain in the left heel. He had no atrophy of the back, but had paracervical spasm from L1 to the sacrum.

Strength testing was 5/5. Claimant was intact to light touch. He had a bilateral straight leg lift sign at approximately 45 degrees. In terms of Waddell signs, he had an overreaction of 4/5. (Tr. 192).

Dr. Shults' impression was chronic low back pain. Given claimant's subjective findings of increased pain with range of motion, but lack of any objective signs of strength or radiculopathy signs in his lower extremities, Dr. Shults could not say exactly what claimant's limitations to work would be. However, based on his pain response, Dr. Shults opined that claimant would "definitely have a difficult time finding and keeping a job." He stated that claimant would have a difficult time sitting for long periods of time, standing, and

carrying objects. He also believed that stooping would be extremely difficult, and traveling long distances would be mildly affected. Claimant's ability to manipulate objects with his upper extremities would not be affected.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Shults determined that claimant could lift/carry a maximum of 10 pounds. (Tr. 193). He could stand, walk, and sit a total of two hours, .5 without interruption. (Tr. 193-94). He could never climb, kneel, crouch, stoop, balance or crawl. (Tr. 194). His ability to reach, handle, feel, push/pull, see, hear, and speak was not affected by his impairment. He had no environmental restrictions. (Tr. 195).

**(8) Consultative Orthopedic Examination by Dr. Shults dated February 21, 2007**. Claimant complained of leg and back pain, and hand swelling. (Tr. 196). On examination, he had no tenderness or spasm. (Tr. 197). His strength in his upper extremities was 5/5, and he had +2 pulses.

On lumbar exam, claimant had tenderness to palpation along the left paralumbar musculature area with some spasm. He was able to talk on his tiptoes and heels with little difficulty other than a little ataxia. He had positive straight leg raise sign on the left at 40 degrees and on the right at 75 degrees. His strength

of the lower extremities was 5/5. He had brisk reflexes and was intact to light touch. His pulses were +2.

X-rays of the lumbar spine showed normal alignment, with no gross arthritic changes or osteophytes. Claimant had a mild straightening of the spine with loss of the lordotic curve.

Dr. Shults' impression was that claimant's back pain had changed to more on the left side since his last examination. (Tr. 198). He continued to have decreased range of motion, and some spasm in his lumbar musculature. He had no radiculopathy or neurologic deficits in the lower extremities.

Dr. Shults noted that claimant had quite a number of complaints which could not be quantified by objective findings. He opined that it would be difficult for claimant to find and hold gainful employment, given the amount of pain that he described and his inability for activities secondary to pain. But, Dr. Shultz did not find a lot of objective findings on that examination to back up claimant's complaints.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Shults found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 199). He could stand/walk and sit at least two hours in an eight-hour workday. (Tr. 199-200). His ability to push/pull was

limited in his lower extremities due to complaints of pain. (Tr. 200). He could occasionally climb, balance, and kneel, but never crouch, crawl, or stoop. He had unlimited manipulative functions. (Tr. 201).

**(9) Consultative Examination by Alfred Buxton, Ph.D., dated September 10, 2007**. Claimant reported that he could cook, clean, shop, manage money, communicate, manage time independently, and engage in independent local travel. (Tr. 204). On examination, his verbal receptive and expressive language skills were good. Dress and groom and social skill were good. Recent and remote memories were intact. His ability to attend and concentrate was good. Pace was even.

Intellect was subaverage. Judgment was good. Reasoning and reflective cognition were fair. Insight was poor. Cognitions were simple and concrete, but logical. Mood was even. Claimant was alert, responsive, and oriented in all four spheres.

Administration of the Wechsler Adult Intelligence Scale-III revealed a full scale IQ of 69, verbal score of 69, and performance score of 74. Dr. Buxton opined that claimant was, at best, marginally literate. (Tr. 205). He was of borderline subaverage general intellect and borderline adaptive daily living skill

development.  He was regarded as being marginally competent as a manager of his own personal affairs.

Claimant's Global Assessment of Functioning score was 65 over the previous 12 months.  Dr. Buxton opined that claimant was bright enough to understand simple instruction and command, but would have difficulty with more complex instruction and command.  He stated that as long as claimant were to engage in activities that would not aggravate his chronic pain or edema, then, at a minimally adequate level, he should be able to perform in a reliable and dependable fashion as an employee, and be able to tolerate the frustration and stress he would encounter in a job setting.  (Tr. 205-06).  Dr. Buxton further found that, at a minimally adequate level, claimant should be able to establish and maintain mutually rewarding relationships with co-workers and supervisors.  (Tr. 206).

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Buxton found that claimant was mildly limited as to his ability to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions.  (Tr. 208).  He was moderately limited as to his ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions.  He was mildly limited as to his

ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 209).

**(10) Records from Dr. Edison Ong dated January 1, 2006 to January 17, 2008**. An MRI of the lumbar spine dated March 17, 2004, revealed transitional lumbosacral vertebra, with nearly complete sacralization of L5, and no significant disc herniation, central canal stenosis or foraminal encroachment at any level. (Tr. 233-34).

On June 12, 2006, claimant complained of chest pain. (Tr. 232). Chest x-rays showed no evidence of acute cardiopulmonary disease. An echocardiogram showed evidence of LVH, mild left atrial enlargement, mild TR, and preserved ejection fraction. (Tr. 230). A nuclear stress test showed normal myocardial perfusion and normal left ventricular systolic function with LVEF 59%. (Tr. 228).

A lumbar MRI dated December 12, 2007, showed mild congenital narrowing of the lumbar spinal canal along with mild facet joint hypertrophy and ligamentous thickening at the mid-lower lumbar levels, which findings did not result in any significant central canal stenosis or foraminal compromise; mild annular disc bulging at L3-L4 without significant associated stenosis, and evidence of a small left foraminal/extra-foraminal disc protrusion at L4-L5, with no evidence of impingement of the exiting nerve root. (Tr. 226-27).

**(11) Claimant's Administrative Hearing Testimony**.[3] At the hearing on August 12, 2008, claimant testified that since his accident, he had had arm pain and his legs started giving out. (Tr. 268). He also complained of hand swelling and numbness. (Tr. 269).

**(12) Administrative Hearing Testimony of Deborah Bailey, Vocational Expert ("VE")**. Ms. Bailey described claimant's past relevant work as a welder-fitter, which she classified as medium, skilled work. (Tr. 269). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was limited to sedentary work; was marginally literate with a limited education; had moderate limitations in his ability to understand and follow complex instructions, but could understand simple instructions and commands with mild limitations; had moderate limitations in his ability to carry out complex instructions, make judgments on complex and work-related decisions, and to understand, remember, and carry out complex instructions, and had mild limitations in his ability to respond appropriately to normal changes in a routine work setting. (Tr. 269-70). In response, Ms. Bailey testified that such claimant would not be able to do any work. (Tr. 270).

---

[3]The transcript of the hearing held on August 8, 2006, is found on pages 284-317. There, claimant testified that he had a 10th grade education in resource classes and past employment as a fitter/welder from 1990-2001. (Tr. 284-86).

When the ALJ changed the hypothetical to a slight limitation in the ability to perform jobs requiring one-and two-step instructions and commands, Ms. Bailey testified that such claimant would able to work as a production checker and examiner, of which there were 1,000 jobs statewide and 39,500 nationally, and laborer, non-construction, of which there were 1,096 positions statewide and 71,400 nationally. (Tr. 270-71).

**(12) The ALJ's findings are entitled to deference**. Claimant argues that the ALJ erred: (1) in failing to find the existence of a period of disability at any point during the claim; (2) in finding that he had the ability to perform work activity on a regular and continuing basis; (3) in committing an error of law in his application of the "substantial evidence" rule; (4) in failing to issue a decision that was supported by substantial evidence; (5) in failing to consider the effects of the erosion of claimant's capacity for the performance of sedentary work, and (6) in failing to find that he met Section 12.05C in the listing of impairments for want of a valid IQ score.

First, claimant argues that the ALJ failed to consider whether claimant had ever established a 12-month period of disability. [rec. doc. 12, p. 6]. Specifically, he asserts that the psychological and orthopedic opinions from 2003 and 2005, as

well as the treating source, do not provide substantial evidence that he was then able to work.

Claimant contends that the ALJ disregarded claimant's testimony and relied instead on two consulting examiners' reports to support his decision of non-disability. [rec. doc. 12, p. 7]. In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir.1991).

Here, the record reflects that the ALJ evaluated all of the factors which the Fifth Circuit requires for establishing disability, including the reports from Dr. Mitchell, Teche Action Clinic, Dr. Davidoff, and Dr. Shults, and the diagnostic tests. (Tr. 18-19). The ALJ found that despite claimant's subjective complaints, the objective findings were "equivocal at best," and did not approach the level of severity described in the musculoskeletal listings at §1.00. (Tr. 19). This opinion is supported by Dr. Shults' 2005 report, in which he noted that claimant had subjective findings of increased pain with range of motion, but no objective signs of strength loss or radiculopathy signs in his lower extremities. (Tr. 192). Dr. Shults further observed that given this lack of objective findings, it would be

14

"difficult to say exactly what his limitations to work would be."  At the subsequent exam in 2007, Dr. Shults again found no objective findings.  (Tr. 198).  While he noted that it might be difficult for claimant to find and hold gainful employment in light of his complaints of pain, he reiterated that "unfortunately, I don't find a lot of objective findings today in the office to back that up."  (Tr. 198).

Additionally, claimant's treating source at Teche Action Clinic, Dr. Mitchell, found that despite claimant's complaints of back pain, he had full range of motion, full strength of 5/5 in his extremities, and negative straight leg raising tests.  (Tr. 129, 130, 131, 186).  Further, Dr. Davidoff determined that claimant had good ambulation, full muscle strength, no atrophy, normal sensory functioning, and intact cranial nerves.  (Tr. 140-41).  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  As the ALJ's findings regarding disability are supported by substantial evidence, claimant's argument lacks merit.

Next, claimant argues that the 2003 psychological consult from Dr. Friedberg established that he was unable to work at that time.  [rec. doc. 12, p. 8]; (Tr. 136-38).  However, the ALJ determined that claimant's IQ scores from Dr.

15

Friedberg were invalid. (Tr. 20). This finding is supported by the evidence.

Dr. Friedberg observed that claimant's evaluation results "may be somewhat lowered due to concentration impairment." (Tr. 137). She opined that claimant likely functioned "somewhere at the upper end of the Mild Mentally Disabled to borderline range, as he appeared to be quite capable of holding down semi-skilled jobs in carpentry and welding." (Tr. 138).

The ALJ's finding that Dr. Friedberg's IQ test results were invalid is further bolstered by Dr. Buxton's report. On that evaluation, claimant's IQ scores were much higher. (Tr. 204). Dr. Buxton found that claimant was of borderline subaverage general intellect and borderline adaptive daily living skill development. (Tr. 205). As neither Dr. Friedberg nor Dr. Buxton found that claimant was mentally retarded, his argument that he could not work because of his low IQ lacks merit.[4]

---

[4] Based on these reasons, claimant's argument that he meets the listing at §12.05 also fails. This listing for mental retardation provides: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
\*\*\*
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. (emphasis added). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed December 15, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE