RECEIVED

JAN 1 8 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JERRY JAMES | CIVIL ACTION NO. 09-0297 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Commissioner's decision in this social security matter, denying benefits, be affirmed and the case dismissed. [Doc. 15] Claimant Jerry James filed an objection to the magistrate judge's Report [Doc. 16], wherein Mr. James argues for "de novo review of this matter," and either a judgment in favor of the claimant granting him benefits or a remand of this matter to the Commissioner for further proceedings. Finding Mr. James's objections do not have merit and that the decision of the ALJ is supported by substantial evidence in the record, this Court ADOPTS the findings and recommendation of the magistrate judge and AFFIRMS the denial of benefits.

I. **Factual and Procedural Background**

As set forth in the magistrate judge's Report and Recommendation, Mr. James is a 49-year old claimant seeking disability insurance benefits and supplemental security income on grounds he is disabled due to borderline intellectual functioning and low back pain. Mr. James's application was denied on initial review, and an administrative hearing was held on January 18, 2005. That first hearing did not result in a decision, and a second hearing was conducted, which led to a finding of

no disability. This finding was reversed by the Appeals Council on June 13, 2007. On remand, a third hearing was conducted on August 12, 2008, which resulted in an unfavorable decision for the claimant. Specifically, the ALJ determined Mr. James suffers from the severe impairments of borderline intellectual functioning and degenerative/discogenic disorder of the low back, but retains the residual functional capacity to perform some limited sedentary work. The Appeals Counsel denied review, and this appeal followed.

## II. The Magistrate Judge's Report and Recommendation

On appeal, Mr. James alleges six errors: (1) the ALJ erred in failing to find the existence of a period of disability at any point during the claim; (2) the ALJ erred in finding the claimant had the ability to perform work activity on a regular and continuing basis; (3) the ALJ committed an error of law in his application of the "substantial evidence" rule; (4) the decision of the ALJ is not supported by substantial evidence; (5) the ALJ erred in failing to consider the effects of the erosion of claimant's capacity for the performance of sedentary work; and (6) the ALJ erred in failing to find the claimant meets the requirements of Listing 12.05(C) for want of a "valid" IQ score.

In his Report and Recommendation, the magistrate judge concluded claimant failed to establish a 12-month period of disability; the evidence in the record supports the ALJ's conclusion that the claimant can perform work on a regular and continuing basis; and the claimant does not meet the requirements of Listing 12.05(C). In so concluding, the magistrate judge concluded the ALJ's finding that the claimant's IQ scores from Dr. Friedberg are invalid is supported by the evidence.

## III. Standards of Review

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed

findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Therefore, this Court makes a *de novo* review of the portions of the magistrate judge's report to which the defendant objects. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

Furthermore, this Court notes the general standard of review with respect to the decision of the ALJ. This Court reviews a denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000). A final decision is supported by substantial evidence if we find relevant evidence sufficient to establish that a reasonable mind could reach the same conclusion reached by the Commissioner. *Id.* In this Court's review of the evidence, the Court does not substitute its judgment for the Commissioner's judgment. *Id.* If there are conflicts in the evidence, this Court accepts the Commissioner's resolution of those conflicts so long as that resolution is supported by substantial evidence. *Id.*

The claimant asserts two objections to the magistrate judge's Report: (1) the magistrate judge failed to consider the effects of the erosion of claimant's capacity for the performance of sedentary work, and (2) the magistrate judge failed to find the claimant meets the requirements of Listing 12.05(C) for want of a "valid" IQ score.

    1.    **Erosion of the claimant's capacity for the performance of sedentary work**

The claimant argues the ALJ and magistrate judge failed to address the effects of the erosion

of the claimant's capacity for the performance of sedentary work. In connection with this argument, the claimant objects to the ALJ's reliance on a defective hypothetical question posed to the vocational expert at claimant's administrative hearing on August 12, 2008.

The claimant relies on Social Security Ruling 96-9p[1] in support of his argument that the claimant's capacity for sedentary work has been severely eroded. SSR 96-9p starts off by emphasizing:

1. An RFC [residual functional capacity] assessment for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.

2. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience

SSR 96-9p, *1.

The ruling goes on to address mental limitations as follows:

**Mental limitations or restrictions:** A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work:

* Understanding, remembering, and carrying out simple instructions.
* Making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions.
* Responding appropriately to supervision, co-workers and usual work situations.

---

[1] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20 CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

      \*      Dealing with changes in a routine work setting.

*Id.* at *9.

Review of the ALJ's decision shows the ALJ did, in fact, consider and address the issue of whether the claimant's occupational base was so eroded as to preclude the claimant from performing any jobs within that occupational base, to wit:

> . . . The claimant's ability to perform all or substantially all of the requirements of this level of work [sedentary] has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: product checker examiner, with 1,000 jobs existing in the State of Louisiana and 39,500 such jobs existing in the national economy; and non-construction laborer, with 1,096 statewide jobs and 71,400 national jobs.

[Tr. 23-24].

Considering the foregoing, the ALJ properly considered the claimant's age, education, and work experience – noting elsewhere in the decision the claimant has past work experience as a welder/fitter and carpenter, jobs that fell in the medium exertion category of skilled labor – in concluding the claimant's occupational base has not been so eroded that the claimant cannot perform some sedentary work.

The conclusion of the ALJ is supported by the opinions of the examining doctors, both those who examined the claimant for mental impairments, and Dr. Jonathan M. Shults, an orthopedic surgeon, who examined the claimant for back pain in 2005 and 2007. Dr. Buxton, an examining psychologist, reported the claimant is capable of performing some work [Tr. 205-06]. Similarly, in 2005, Dr. Shults reported although the claimant had subjective findings of increased pain with

range of motion, he had no objective signs of strength loss or radiculopathy in his lower extremities. (Tr. 192). Dr. Shults further observed that given this lack of objective findings, it would be "difficult to say exactly what [claimant's] limitations to work would be." In 2007, Dr. Shults reported he again found no objective findings to support the claimant's complaints of severe pain. (Tr. 198). While Dr. Shults noted it might be difficult for the claimant to find and hold gainful employment in light of his complaints of pain, he reiterated "unfortunately, I don't find a lot of objective findings today in the office to back that up." (Tr. 198).

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Francois v. Commissioner of Social Sec.*, 2001 WL 322194, *11 (E.D. La. 2001), *citing Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. *Francois*, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Carrier*, 944 F.2d at 246. This court may not re-weigh the

evidence. *Id., citing Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). Here, there are real conflicts between claimant's complaints of pain and the objective medical evidence. Although the claimant did have limited range of motion, he lacks most of the other indicia of chronic pain, and the ALJ therefore concluded his complaints of pain are not entirely credible. As this Court cannot re-weigh the evidence, and as there is evidence in the record supporting the ALJ's conclusions, this Court concludes the ALJ's findings are supported by the record.

Finally, with respect to the issue of erosion of the occupational base, the claimant argues the ALJ "massaged' his hypothetical questions posed to the vocational expert at the administrative hearing on August 12, 2008 to coax answers indicating the claimant is not disabled. In the instant case, the vocational expert testified there are *no* jobs in significant numbers for a hypothetical claimant who is limited exertionally to sedentary work; is marginally literate; is a younger individual with a limited education; has moderate limitations in his ability to understand and follow complex instructions; has mild limitations in his ability to understand simple instructions and commands; and has mild limitations in his ability to respond appropriately to normal changes in a routine work setting. (Tr. 270.) The vocational expert testified in order for a hypothetical claimant with the residual functional capacity of the claimant in this case to perform jobs at the sedentary level – taking into account that this claimant also has marginal literacy – there must be almost *no* limitations on the ability to follow simple instructions. [Tr. 270].

Faced with the foregoing testimony, the ALJ posed the following questions to the vocational expert:

        Q:    Mild limitations would narrow that?
        A:    On simple instructions?
        Q:    Yeah.
        A:    Yes, Your Honor.

> Q: Mild limitations would?
> A: Yes.
> Q: What if I told you the definition of mild . . . for purpose of that was, quote, there is a slight limitation in this area but the individual can generally function well, close quote.
> A: Well, that description I would say that does not affect then the ability really to any extent on simple instructions.
> Q: Okay. So in that case would there be jobs available in the regional or national economy?
> A: Yes.

[Tr. 270-71].

Considering the foregoing, the ALJ concluded the claimant is not disabled.

This Court notes the term "mild" as it defines a claimant's mental limitations is a term of art. This Court notes the form filled out by Dr. Buxton, which provides the evidence upon which the ALJ relied in concluding the claimant has "mild" or "slight' limitations in his ability to answer simple instructions, defines "mild" as "there is a slight limitation in this area, but the individual can generally function well," as the ALJ indicated at the hearing.[2] Once the definition of mild was explained to him, the vocational expert concluded the "mild" or "slight" limitations in claimant's ability to follow simple instructions would not significantly adversely impact his ability to understand simple instructions and would not ultimately preclude the claimant from performing two sedentary jobs that exist in significant numbers in both the local and national economies.

The testimony of the vocational expert is bolstered by the opinion of Dr. Buxton, who reported on September 1, 2007:

---

[2] Although this Court was unable to find a case within the Fifth Circuit addressing the use of this form, this Court did find a 2010 case from the Western District of Washington in which the court laid out the definitions for the different levels of impairments cited on Form HA-1152. Interestingly, the version of the form defined "mild" and slight" in the following manner: "*Slight*-There is some mild limitations in this area, but the individual can generally function well." *Kerrigan v. Astrue*, 2010 WL 55860, 3 (W.D. Wash. 2010). This Court finds the *Kerrigan* case supports this Court's conclusion that the terms "mild" and "slight" are interchangeable with respect to defining levels of mental impairment.

8

> He is bright enough that he can understand simple instruction and command but would have difficulty with more complex instruction and command.

(Tr. 205).

The foregoing comports with the ALJ's conclusion that the claimant's limitations in his ability to understand simple instructions is "mild" or "slight." Considering the foregoing, this Court concludes the ALJ properly addressed the issue of erosion of the occupational base, and concludes the ALJ's decision that the claimant can perform some sedentary work is supported by evidence in the record.

### 2. Mental impairment

Listing 12.05(C) sets forth the requirements in order for a claimant to meet the listing for mental retardation, as follows:

> ***Mental retardation***: Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning initially manifested during the developmental period*; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirement in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, of full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In order to establish disability under Listing 12.05(C), the claimant must satisfy not only the requirements of Subsection (C) itself – that is, low IQ scores and another physical or mental impairment -- but also the requirements of the "introductory paragraph," that is, the claimant must show he has "significantly subaverage general intellectual functioning with deficits in adaptive

functioning initially manifested during the developmental period." *See, e.g., Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009).

In the instant case, the ALJ determined the claimant does not meet the requirements of Subparagraph C, because he does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In so concluding, the ALJ acknowledged the claimant has obtained IQ scores in the 60s on two occasions, results that would appear, on their face, to satisfy the "low IQ" portion of Listing 12.05(C). Specifically, Dr. Friedberg, a licensed psychologist who examined the claimant on September 8, 2003, reported a verbal score of 65, a performance score of 57, and a full scale score of 57 and diagnosed claimant with "mild mentally disabled." However, Dr. Friedberg explained the claimant's difficulty remembering simple instructions appeared to be impacted by concentration problems, or even interference from medication:

> He had some difficulty in remembering and carrying out simple instruction, but this appears to be due to concentration impairment, perhaps by affectual interference and/or medication side effects. Taking Mr. James's educational experiences and employment experiences into account, it is likely he functions somewhere at the upper end of the Mild Mentally Disabled to Borderline range, as he appeared to be quite capable of holding down semi-skilled jobs in carpentry and welding.

[Tr. 138.]

Dr. Buxton, a clinical psychologist who examined the claimant on September 10, 2007, tested the claimant and obtained a verbal score of 69, a performance score of 74, and a full scale score of 69. Dr. Buxton further noted:

> He functions no worse than the upper end of the mild range of mental retardation intellectually.....
>
> He is of borderline subaverage general intellect and borderline adaptive daily living skill development. . . . .*As long as he were able to engage in activities that would not*

10

> *aggravate his chronic pain or his edema then at a minimally adequate level he should be able to perform in a reliable and dependent fashion as an employee.* As long as he would engage in activities that would not aggravate his chronic pain and edema then at a minimally adequate level he should be ab le to tolerate the frustration and stress he would encounter in the job setting. . . .

[Tr. 205] (emphasis added).

The ALJ gave more weight to Dr. Buxton's report and the IQ scores obtained by him in 2007 than he did to the IQ scores obtained by Dr. Friedberg in 2003. In so doing, the ALJ noted the claimant's past work as a welder and carpenter and explained an individual with true mental retardation likely would not have bene able to hold down the foregoing jobs. The ALJ concluded "[i]t is reasonable to assume that someone who was able to maintain employment for a number of years in such semi-skilled professions does not have an IQ of less than 59." [Tr. 20]. Noting the significantly higher scores the claimant obtained when tested by Dr. Buxton, the ALJ concluded the IQ scores obtained by Dr. Friedberg in 2003 were not truly representative of the claimant's intellectual functioning level and therefore concluded the IQ scores obtained by Dr. Friedberg were not valid. The ALJ further noted:

> While Dr. Buxton found full scale IQ pf 69, verbal IQ of 69, and performance IQ of74, he also opined that claimant is "of borderline subaverage general intellect."
> . . .It is significant that Dr. Buxton's impression was borderline intellect and not mental retardation. IQ scores of 69 on their face meet the IQ requirements of Listing 12.05(C), but in this case it's clear that neither of the consulting psychologists feel that claimant was, in fact, mentally retarded. Thus, there are no valid IQ scores of between 60 and 70. I again note that claimant's successful work at semi-skilled professional belies an actual IQ in the 60s.

[Tr. 20].

The magistrate judge concluded there is substantial evidence supporting the ALJ's conclusion. First, the magistrate judge concluded the ALJ properly gave greater weight to the IQ scores obtained by Dr. Buxton and further noted Dr. Buxton concluded the claimant can perform

11

some work. The magistrate judge finally concluded the claimant's argument that he meets Listing 12.05(C) fails.

Having reviewed the record and the applicable law, this Court concludes the magistrate judge did not err in concluding substantial evidence supports the ALJ's determination that the claimant does not meet the requirements of Listing 12.05(C) and does not have a disabling mental impairment. First, this Court notes Dr. Friedberg is not a treating physician of the claimant. As such, the ALJ was not required to give controlling weight to her opinion, or to explain why he gave greater weight to the opinion of Dr. Buxton. Indeed, the claimant has cited no authority for such a requirement, and this Court is aware of none. Here, , in fact, the ALJ did explain why he gave greater weight to the report of Dr. Buxton, and this Court concludes that explanation – and the ALJ's ultimate conclusion regarding mental impairment – is supported by substantial evidence.

To satisfy the requirements of this listing, the claimant must satisfy not only the requirements of Subsection (C) itself – that is, low IQ scores and another physical or mental impairment -- but also the requirements of the "introductory paragraph," that is, that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning." *See, e.g., Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009). Dr. Buxton reported the claimant is of "borderline subaverage general intellect and borderline adaptive daily living skill development." Dr. Duxton further opined "[a]s long as he were able to engage in activities that would not aggravate his chronic pain or his edema then at a minimally adequate level he should be able to perform in a reliable and dependent fashion as an employee. As long as he would engage in activities that would not aggravate his chronic pain and edema then at a minimally adequate level he should be ab le to tolerate the frustration and stress he would encounter in the job setting. . . ." [Tr. 205]. Thus, there is evidence

in the record that claimant has "borderline subaverage general intellect and borderline adaptive daily living skill development" rather than "significantly subaverage general intellectual functioning with deficits in adaptive functioning," as required by the listing.

Thus, even considering the plaintiff obtained a verbal score of 69 and a full scale score of 69 with Dr. Buxton – which, on its face, satisfies the requirement that the claimant have a valid verbal, performance, or full scale IQ of 60 through 70 – this Court concludes there is evidence in the record to support the ALJ's conclusion that the claimant does not meeting the listing, because he does not meet the threshold requirement of Listing 12.05, that is, he does not have mental retardation, which is defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. *See, e.g., Randall*, 570 F.3d at 662 (ALJ entitled to rely on clinical psychologists' specific analysis of Randall's physical and mental capabilities, including the determination that she suffered from only "mild/borderline" adaptive retardation and that her impairments "would not preclude gainful competitive employment."), *citing Domingue v. Barnhart,* 388 F.3d 462, 463 (5th Cir.2004).

Thus, whether the ALJs conclusion that Dr. Buxton's finding that the claimant has borderline intellectual functioning as opposed to mental retardation results either in a finding that the claimant's IQ scores are not valid, or that the claimant does not satisfy the introductory portion of Listing 12.05, this Court concludes the ALJ's finding that the claimant does not satisfy the requirements of Listing 12.05(C) is supported by evidence in the record.

## IV.  Conclusion

Considering the foregoing, IT IS ORDERED that the findings and recommendation of the magistrate judge are AFFIRMED. Therefore, the decision of the Commissioner is AFFIRMED and

the application of the claimant for benefits is DENIED, this Court having determined the claimant is not disabled. All claims alleged in this matter are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___18___ day of January, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE